THE HOBOKEN BANK FOR SAVINGS.

v.

PETER H. BECKMAN et al.

1. Mortgaged premises were sold, and a decree for deficiency taken against the mortgagor. Thirteen days before such sale, the mortgagor conveyed all his lands, valued at $50,000, to his two sons, one of them a minor, in satisfaction of an alleged indebtedness of $8,000 to them, no other debts being shown.—*Held*, fraudulent as against the mortgagee.

2. Although an answer, under oath, denying fraud, be not overcome by the testimony of two witnesses, or what is equivalent thereto, yet such answer, if it contain admissions of facts from which fraud follows as a natural and legal, if not a necessary and unavoidable conclusion, does not disprove such fraud. (a)

Creditor's bill. On final hearing on pleadings and proofs.

*Mr. F. B. Ogden* for complainant.

*Mr. R. Parmley* and *Mr. H. S. White*, for defendants

THE CHANCELLOR.

The bill states, and it is admitted, that the complainant, on the 8th of August, 1878, obtained a decree of this court for foreclosure and sale of real property, mortgaged to it by the defendant, Peter H. Beckman, under execution issued, on which the property was sold March 27th, 1879; that the decree for foreclosure contained the usual personal decree for deficiency against the mortgagor; that there was a deficiency of $1,360; that execution for the deficiency was issued April 4th, 1879, and that it was returned, wholly unsatisfied, on the 9th of that month. On the 14th of that month, thirteen days before the sale of the mortgaged premises, Beckman conveyed all his property, consisting of several different parcels of valuable real estate in Hudson county, to his two sons, the defendants, Henry and William

(a) NOTE.—See *Sayre* v. *Fredericks*, *1 C. E. Gr. 205; How* v. *Camp, Walk. Ch. 427.*—REP.

Beckman. The deed expresses a consideration of $7,758.88. The proof is, that the property so conveyed is worth $53,250. It is true it is alleged (it is not proved except by the production, by the defendants, of certain deeds and a declaration of sale), that a part of the property, valued at $29,050, is held under tax title merely, and it is alleged that it is subject to taxes and assessments for municipal improvements also. It is also alleged that the rest of the property, valued at $24,200, is subject to mortgages amounting to $16,525, and a copy of the record or registry of mortgages appearing to be on the property, is offered, but no proof is given as to the amount due thereon. It is alleged, too, that that property is subject to taxes and assessments to the amount of $3,828.95, and bills for taxes and assessments upon it to that amount are put in evidence, but, beyond them, there is no evidence on the subject. The bill alleges that the consideration of the deed from Beckman and his wife to his sons was false and fictitious, and that no consideration actually passed between the grantor and grantees for the conveyance; that the grantees are both young men of no financial ability, and that one of them is a minor. It calls for answer on oath, and the defendants have so answered. In substance, they allege that the boys kept a livery stable and undertaker's establishment, and their father managed the business for them; that he collected more money in it than he paid out, and owed them a large sum on account of his collections; that they frequently asked him to come to an account, but never could get him to do so until the day of the date of the deed to them, and that the consideration stated in the deed was the amount then found to be due to them from him. This meagre statement is all that is given by the defendants in support of a transaction which is abundantly suspicious on its face. Though the bill alleges that the father was indebted to others besides the complainant, the answer denies it as to all other persons than the sons, alleging that, except the debts of the complainant and the sons, he did not owe a dollar. So that within less than two weeks prior to the foreclosure sale, with a decree for deficiency against him, Beckman, the mortgagor, conveyed all his real estate to his two sons, in consideration of an alleged debt

from him to them of nearly $8,000, and he did not, he says, owe a dollar to any one except them and the complainant. Nor, so far as appears, was there any evidence of the alleged debt to the sons. Nor does there appear to have been any discharge of it, if it existed. It appears by the testimony that when, after the conveyance, one of the sons was asked, by the president of the complainant, what consideration was paid for the conveyance, he answered that he " did not know; that it was not fixed up yet; that it was on their books." And when the president asked him if he paid any money to his father, he replied that he " could not tell; it was not fixed up yet." And in the same conversation he said he was working for his father. That he made those replies is not denied. Why the father should have conveyed all his property to his sons in satisfaction of the alleged debt, instead of securing their debt thereon, does not appear. Nor does it appear that they were pressing or even urging him to secure or satisfy their debt. There does not appear to have been any valuation of the property or any price fixed upon it. A transaction so suspicious cannot escape the condemnation of the court.

The defendants insist that, having answered under oath as required, their answer, so far as it is responsive, is to be taken as conclusive unless overcome by the testimony of two witnesses, or what is equivalent thereto. But a denial by the answer, in such a case as this, of the existence of fraud, will not avail to disprove it where the answer admits facts from which fraud follows as a natural and legal, if not a necessary and unavoidable conclusion. Here the answer admits that there was a decree for foreclosure and sale, and a personal decree for deficiency against the mortgagor; that a few days before the sale took place he conveyed a very large amount of property to his two sons (one of whom was a minor), with whom he was concerned in business, as manager, according to the answer. No account is given of the particulars of the alleged debt, but it is merely averred that there was an account, and that the consideration of the conveyance was the amount found due thereon. It is not alleged that the amount of the consideration as expressed in the deed was, in fact, due. The value of the property conveyed is shown to be $50,000,

while the alleged debt was less than $8,000. No satisfactory proof is offered to show that the apparent disparity between the value of the property and the alleged debt did not, in fact, exist. As to the difference between the amount of the alleged debt, if it existed, and the greater value of the property, the conveyance was a fraud on the complainant. When the value of the property was established at nearly seven times the amount of the debt, it was incumbent on the defendants to show, by satisfactory proof, that the disparity did not, in fact, exist. Besides, the time when and the parties between whom the conveyance was made, and the character of the transaction as detailed in the answer, all show that, notwithstanding the denial of the answer, the conveyance was designed to defraud the complainant. It will be set aside accordingly as against the complainant's debt.